THIGPEN, Judge.
This is a child custody case.
The father of the children was tried for the murder of their mother. Although the father was acquitted, one of the children testified that he witnessed the murder. Subsequently, the Department of Human Resources (DHR) petitioned to terminate the parental rights of the father. After a hearing, the father’s parental rights were terminated and this decision was upheld on appeal to this court. See T.V.N. v. State Dep’t of Human Resources, 586 So.2d 227 (Ala.Civ.App.1991).
P.J.S. works with a victim’s advocacy program in helping children overcome their fears of testifying at trial. While working with the children, P.J.S. and her husband, E.H.S., (collectively referred to as the ap-pellees), became involved with the children. The appellees served as intervenors in all of the proceedings regarding the children, and after the father’s parental rights were terminated, the appellees petitioned for permanent custody of the children. The children were initially sent to two different foster homes; however, permanent custody was eventually awarded to the appellees. DHR’s motion to stay the order pending the outcome of an appeal was denied.
On appeal, DHR contends that the granting of permanent custody to the appellees was not in the best interests of the children. Specifically, DHR expressed concern regarding the safety of the children because the appellees live in geographical proximity to the father.
Following an ore tenus proceeding, the trial court’s determination is afforded a favorable presumption that will not be disturbed unless the evidence reveals that its findings were plainly and palpably wrong. C.D.H. v. State Dep’t. of Human Resources, 568 So.2d 1237 (Ala.Civ.App.1990). The paramount and controlling consideration in a custody case is the best interests and welfare of the children. Travis v. Department of Human Resources, 547 So.2d 571 (Ala.Civ.App.1989). In this case, factors to consider include the potential risk to the children due to living near the father and the possible adverse effects to the children if moved to another new and unfamiliar household.
The father’s attorney testified that it would not be wise to place the children near the father, because he may attempt to abduct them or to harm the appellees. The attorney testified that the father was knowledgeable of the appellees’ whereabouts, and the fact that the father had not yet attempted to contact the appellees did not allay his fears for their safety. He also testified that following the termination of the father’s parental rights, the father came to his house and was angry, but that he eventually calmed down. The attorney had neither seen nor talked to the father in several months. He did not know whether the father was aware of the custody proceedings.
The record reveals that the children have already been uprooted three times. The older child explained difficulties adapting to the new foster home, but later became attached to the foster parents and was *1036 apprehensive about a further move. The children’s counsellor testified that the children needed permanency, that the older child was opposed to being uprooted again, and that the children experience more problems each time they are forced to make another family adjustment.
When questioned by DHR regarding the children’s reaction to their living with the appellees, the counsellor responded:
“When we talked about the [appellees], it was in terms of visitation that they had had previously. The experiences all appeared to be good experiences.
[[Image here]]
“When asked specifically, do you want to go live with somebody, the answer is no. And the answer is no to living with anybody else other than who we’re with.
[[Image here]]
“So, the specifics in terms of answering that question in terms of saying just specifically with the [appellees], it’s with anybody.
[[Image here]]
“[The older child] wants to stay put.”
The counsellor stated that he had no opinion regarding with whom the children should be placed, but that they needed to be together and that they needed love and attention. He stated that the younger child was somewhat hyperactive and that he needed to continue in a speech therapy program. The counsellor also testified that it would be detrimental to the children to be continually moved.
The record reveals that the second foster home was not a permanent custody option for the children. Therefore, when permanent custody was awarded to the appellees, the children were moved for the third time, and they have been living with the appel-lees since September 6, 1991. The testimony at trial revealed that the appellees both have good jobs, that they enjoy an excellent reputation in the community, and that they would be good parents for the children. Further testimony revealed that there was a bond between the appellees and the children.
A social worker testified that she saw no reason for DHR to object to permanent placement of the children with the appel-lees. She further testified that when she placed the children in their first foster family, no security precautions were taken. She testified that the father had not located the children, even though he lived in the same general area. DHR contends, however, that the father did not intervene with this relationship because the father’s parental rights had not yet been terminated. Certainly, there is a possibility that the father may attempt to find the children.
The evidence revealed that one of the children is hyperactive and has a speech impediment; another suffers borderline emotional and psychological problems resulting from the traumatic events surrounding the mother’s death, as well as the abrupt separations from his foster families. The children are in need of stability in their lives. The adoptive parents that were proposed by DHR had not met the children. These facts were not disputed by DHR.
The trial court found “clear and convincing evidence that the interests of the children are best served by placing them in the permanent custody of the [appellees] who are willing and well able to provide for their physical, financial and emotional needs.” In view of these circumstances, removing the children from the appellees’s home only to place them into a strange household would not serve the children’s best interests. Ample evidence supports the trial court’s findings without consideration given to the disputed offers of proof submitted by the appellees. We, therefore, affirm the judgment of the trial court.
The appellees’s motion for damages for a frivolous appeal is denied.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J„ concur.